UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID EASLEY, )<br>    Plaintiff, )<br>            )<br>       v.   )<br>            )<br>            )       C.A. No. 05-11290-EFH<br>KATHLEEN DENNEHY, et al., )<br>    Defendants. )<br>            )<br>            )<br>            ) | |

MEMORANDUM AND ORDER

HARRINGTON, S.J.

For the reasons set forth below, Plaintiff's claim of inadequate mental healthcare as to David Nolan and Kathleen Dennehy in her official capacity shall proceed and summonses shall issue. Additionally, Plaintiff is ordered to show cause within forty-two (42) days why the claims against all other Defendants should not be dismissed.

It is further ordered with respect to the various motions filed by Plaintiff that: (1) Plaintiff's Motions for Leave to Proceed *in forma pauperis* (##1, 20) are allowed, (2) Plaintiff's Motion for Leave to File an Amended Complaint (#10) is allowed, (3) Plaintiff's Motion to Amend the Complaint (#11) is allowed, (4) Plaintiff's Motion to Continue for 90 Days (#8) is denied, (5) Plaintiff's Motion to Appoint Counsel (#9) is denied without prejudice, (6) Plaintiff's Motion to Compel Production of Documents (#13) is denied, without prejudice, (7) Plaintiffs [second] Motion to Amend the Complaint (#17) is allowed and (10) Plaintiff's Motion to Reconsider/Stay (#18) is denied.

FACTS

On June 20, 2005, David Easley, a prisoner incarcerated at MCI Cedar Junction, filed a *pro se* civil rights Complaint against several prison officials and employees, alleging violations of 42 U.S.C. § 1983.  Compl. at. 1,4.  Accompanying his Complaint was an emergency Motion for a Temporary Restraining Order ("TRO"), seeking immediate transfer to Bridgewater State Hospital or Old Colony Hospital.  The Motion was denied by Judge Zobel, acting as the Emergency Judge, however Defendant David Nolan was required to file an expedited response to the issues presented, and Defendant has complied with that Order (See #7).  Defendant has also filed oppositions to the various motions filed by Plaintiff.  (See ## 14-16).

Plaintiff claims he is in immediate danger of suicide, and that he has been on "suicide watch" since April 26, 2005.  Motion for TRO; Compl. at 1-2.  He further contends that he attempted to commit suicide on May 13, 2005 by slitting his wrist and that as a result, disciplinary action, rather than therapeutic action, was taken against him by Officer O'Brien.  Compl. at 2.

On July 8, 2005, Plaintiff filed additional documents with the Court.  These documents included a Motion for Leave to Amend the Complaint (# 10), a Motion to Amend the Complaint (# 11,"Amended Complaint"), a Motion to Continue for 90 Days (# 8), a Motion to Appoint Counsel (# 9), and Motion to Compel Documents (# 13).

In his proposed Amended Complaint, Plaintiff asserts various other claims in addition to the issues raised by the original Complaint.  He first asserts that he has been denied access to the courts in several respects.  Am. Compl. at ¶ 1.  He claims that the prison law library has insufficient resources, and that he was denied access to the library restroom.  Id. at ¶¶ 1,3.  He

further alleges that the provision of the Prison Litigation Reform Act, which requires prisoners to exhaust administrative remedies is an attempt to restrict access to the courts.  Id. at ¶ 4.  See 42 U.S.C. § 1997(e) (exhaustion requirement).  Another issue raised is denial of his recreation period while in the prison infirmary.  Id. at ¶ 2.  Additionally, Plaintiff alleges that the prison is depriving him of his First Amendment rights by censoring his mail and his access to music.  Id. at ¶ 5.

In both the original Complaint and the Amended Complaint, Plaintiff alleges that MCI-Cedar Junction is not equipped with proper mental health facilities to treat his mental illness. Compl. at 1-3; Am. Compl. at ¶ 6.  He claims that he is entitled be transferred to a mental health facility.  Compl. at 2.  He further alleges that he is being subjected to cruel and unusual punishment, in that he is being deprived of adequate mental health treatment.  Id.  Plaintiff seeks injunctive relief to "get mental patients out of DDU Supermax isolation units, with brain damages, history of suicide, psych. medication on mental health case and transfer to mental facility."  Id. at 3.  Plaintiff also requests for the windows in the suicide watch cells to be fixed and to "stop practice of no heat taking suicide safety blanket freeze out refrigerator."  Id.

Plaintiff is seeking immediate injunctive relief in the form of a temporary transfer to a mental health facility.  Further, Plaintiff is seeking monetary damages of $130,000 for mental suffering, and to have his prescription for "Zoloft" returned.  Id.

On July 22, 2005, Plaintiff filed three additional documents in this Court, including a [second] Motion to Amend the Complaint (# 17) Motion for Reconsideration and Stay of Further Ruling on Plaintiff's Request for TRO/Preliminary Injunction, (#18), and an Affidavit of Rashad Rasheed, the prison lawyer, (#19).

Plaintiff failed to either pay the filing fee or submit an application to proceed without the prepayment of fees accompanied by a certified prison account statement, as required under 28 U.S.C. § 1915.  By Separate Order of the Court, Plaintiff was afforded forty-two (42) days to either pay the fee or file a completed Application to Proceed *in forma pauperis*.  On July 8, 2005 and on August 3, 2005, Plaintiff filed a completed Application.  The Court has received his prison account information from the Treasurer's Office, as previously Ordered.

## DISCUSSION

I.   Plaintiff's Application to Proceed *in Forma Pauperis*

Upon review of Plaintiff's Application to proceed *in forma pauperis*, indicating he has $.11 in his prison account and no other assets or income, the Court finds Plaintiff has insufficient funds to pay the filling fee, and therefore allows Plaintiff's motion.  By Separate Order, the Plaintiff shall be assessed an initial partial filing fee pursuant to 28 U.S.C. § 1915(b).

II.   Plaintiff's Complaint is Subject to Screening

Because Easley is a prisoner, his Complaint is subject to the provisions of the Prison Litigation Reform Act.  The Prison Litigation Reform Act of 1995 ("PLRA"), Title VIII of Pub.L. 104-134, 110 Stat. 1321-1375 (1996), enacted several provisions which grant this Court the authority to screen and dismiss prisoner complaints.  See 28 U.S.C. § 1915 (proceedings *in forma pauperis*); 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).

Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which

relief may be granted or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2).  *In forma pauperis* complaints may be dismissed *sua sponte* and without notice under §1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless.  Id.; Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

Additionally, § 1915A authorizes the Court to review prisoner complaints in civil actions that seek redress from a governmental entity or officers or employees of a governmental entity and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if it lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A.

Many of Plaintiff's claims are subject to dismissal under §§ 1915, 1915A, for the reasons discussed below.

### III.    Failure to Exhaust Administrative Remedies

Section 1997e(a) of title 42 provides that no action shall be brought with respect to "prison conditions" by a prisoner "until such administrative remedies as available are exhausted." 42 U.S.C. § 1997e(a).  Prison conditions, for purposes of § 1997e(a), have been broadly interpreted to include "all inmate suits about prison life." Porter v. Nussle, 534 U.S. 516, 532 (2002).  Thus, Plaintiff's claims about inadequate access to the prison law library, denial of recreation period, mail censorship, and inadequate mental healthcare claims all involve "prison conditions" and are subject to the exhaustion of remedies requirement.  See id.; accord Menina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 34 (1st Cir. 2002).

The fact that Plaintiff seeks injunctive relief is insufficient to overcome the exhaustion

5

requirement.  See Booth v. Churner, 532 U.S. 731, 740 (2001) (a prisoner must exhaust all available administrative processes regardless of the relief offered through those procedures); accord Menina-Claudio,  292 F.3d 31, 35 (1st Cir. 2002) (no futility exception to the exhaustion requirement);  cf. Casanova v. Dubois, 289 F.3d 142, 147 (1st Cir. 2002) (citation omitted) (although the exhaustion requirement is not jurisdictional, it is mandatory).

Furthermore, Plaintiff's allegation that the PLRA is an attempt to deny prisoners their constitutional right of access to the Courts is rejected.  The PLRA does not prevent prisoners from accessing the judicial system, but merely requires them to pursue all administrative avenues before filing a § 1983 suit in federal court.

Here, Plaintiff's failure to exhaust provides an independent basis for dismissal without prejudice of all claims and parties.  However, there are additional grounds for dismissal of most of Plaintiff's claims, as discussed below.

### IV.     Failure to Comply with Rule 8(a)

Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff to include in the complaint, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) (2).  This statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)), such that the defendant is afforded a "meaningful opportunity to mount a defense." Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st Cir. 2004) (quoting Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)).  "In a civil rights action ..., the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." Educadores

PuertorriqueZos en Acción v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004). Although "the requirements of Rule 8(a)(2) are minimal ... minimal requirements are not tantamount to nonexistent requirements." Id. (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)). This standard sets forth a relatively low pleading threshold, and typically a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations contained in the complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).

The Court recognizes that *pro se* complaints should be read liberally. Hughes v. Rowe, 449 U.S. 5,9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept., 209 F.3d 18, 23 (1st Cir. 2000). However, even under a generous reading, Plaintiff fails to meet the minimum pleading standards to raise a legally cognizable claim against most of the listed Defendants. In addition to Superintendent David Nolan and Commissioner Kathleen Dennehy, Plaintiff has named nine prison employee Defendants, and five "John Doe" Defendants. In the body of his Complaint however, Plaintiff does not mention these additional Defendants by name, or their connection to any of his claims. The only name mentioned in the body of the Complaint is Dr. Herbey, however he is not listed as a Defendant. Accordingly, for failure to plead cognizable claims against these Defendants, Plaintiff's claims are subject to dismissal with respect to Defendants Erika Grandbar, Daniel Sullivan, Wayne Belisle,[1] Ernest Therien, Timothy Sullivan, John Brodbeck, Arthur Brewer (formerly John Doe

---

[1] In Plaintiff's motion for an Emergency Temporary Restraining Order, he alleges that shift commander Wayne Belisle, one of the nine named Defendants, forced a Corrections Officer Marlo Dupont to file a disciplinary report. See Motion for T.R.O. This was not raised in the Complaint. Even if it had been, the claim would be subject to dismissal. [P]rison inmates have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct

1), Susan J. Martin (formerly John Doe 2), June S. Binney (formerly John Doe 3) and John Does 4-8. Specific claims are discussed below.

### A.   Denial of Access to the Courts

In order to state a claim of violation of Due Process by restricted access to a prison law library, an inmate must show: (1) he has been denied "access to the courts," and (2) that as a result he has sustained "actual injury." Bounds v. Smith, 430 U.S. 817, 828 (1977); Lewis v. Casey, 518 U.S. 343, 349 (1996).

The Supreme Court has recognized that prisoners have a right to "access the courts," by means of a prison law library or other form of legal assistance. Bounds, 430 U.S. at 828 (Right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law).

The First Circuit, in accordance with Bounds, found that restricted access to a prison law library deprived inmates of their constitutional right to Due Process. Cepulonis v. Fair, 732 F.2d 1 (1st Cir.1984), (holding that restricted access to a law library, even to maximum security inmates, was a violation of Due Process.)

In Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court held that in order to establish a violation of the "right of access" to the courts, a plaintiff must allege "actual injury." See id. at

---

which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986), cert denied, 484 U.S. 982 (1988) Accord Hanrahan v. Lane, 747 F.2d 1137, 1139-40 (7th Cir. 1984). The constitutional corrective for such things is the subsequent hearing that the inmate receives on those charges. As long as the hearing itself provides the minimum due process protections as set forth in Wolff v. McDonnell, 418 U.S. 539 (1974), and the prisoner has the opportunity to present and rebut witnesses, and then the prisoner has effectively been accorded his constitutional due. See, e.g., Hanrahan, 474 F.2d at 1139-40.

349.  "Actual injury," derives from the doctrine of standing and requires a prisoner to demonstrate that any alleged shortcomings in a legal library or assistance program hindered his efforts to pursue a legal claim involving direct or collateral attacks on sentences or challenges to conditions of confinement.[2]  Id. at 349, 354-355.  Any impairment of any other litigating capacity is an "incidental (and perfectly constitutional) consequence[s] of conviction and incarceration."  Id. at 355.  In Lewis, the Court held that to show "actual injury," an inmate must show that the alleged shortcomings of the prison library have impaired, or are currently impairing, his efforts to pursue a non-frivolous legal claim.  Id. at 351.

Here Plaintiff alleges that he has been denied access to the courts through restrictive prison law library procedures.  Am. Compl. at ¶ 1.  However, he has failed to allege that his restricted access to the prison law library caused him "actual injury."  Additionally, as previously discussed, Plaintiff's claims that the PLRA exhaustion requirement, as interpreted by the Supreme Court in Porter, 534 U.S. 516, denies him access to the courts is without merit.

Although the allegations are not entirely clear, Plaintiff claims that he was denied restroom access while at the law library, or that he was forced to choose between using the restroom and going to the law library.  The Court does not deem this allegation to raise any separate and distinct claim apart from his library access claim.  Accordingly, absent a showing of actual injury and exhaustion of administrative remedies, Plaintiff's claims are not legally cognizable and are therefore subject to dismissal.

      B.    Denial of Recreation

---

[2]The Lewis court listed as examples of "actual injury" an allegation that a complaint was dismissed for failure to satisfy a technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known or an allegation that a prisoner was unable to bring an action to court due to the inadequacies in the law library.  Id. at 351.

Plaintiff alleges that while in the prison hospital infirmary, he was denied his recreational period. Am. Compl. at ¶ 2. However, he does not allege that he has a constitutional or statutory right to a recreational period while being housed in the infirmary unit of the prison. Additionally, he does not provide relevant dates on which this alleged denial of recreation occurred, or who was directly responsible, thus failing to comply with Rule 8(a) of the Federal Rules of Civil Procedure. Additionally, he has failed to exhaust administrative remedies with respect to this claim. Accordingly, Plaintiff's claims of denial of recreation are subject to dismissal.

      C.      Grievance Procedure

In his Amended Complaint, Plaintiff alleges that unnamed prison officials intentionally delayed or denied his ability to file grievances. Id. at ¶ 4. Plaintiff alleges that the grievance coordinator refused to accept and/or respond to grievances which he filed, however Plaintiff fails to assert when these grievances were allegedly filed or what the subjects of the alleged grievances were. Without this pertinent information, the claim precludes a meaningful response from the Defendants and therefore is subject to dismissal under Fed. R. Civ. P. 8(a).

      D.      First Amendment Claims

Plaintiff alleges that he is not permitted to send letters to female prisoners. Am. Compl. at ¶ 5. Without alleging specific factual details, Plaintiff has failed to comply with Rule 8(a). Additionally, Plaintiff claims that he is not able to purchase sexual novels or pornographic materials. Id. However, again, he has failed to specify any factual details to support the mere assertion, including the dates when the alleged event(s) occurred. Without alleging specific facts and incidents, Plaintiff has failed to meet the requirements of Rule 8(a). Plaintiff also alleges that he has not been able to purchase or listen to cassette tapes such as those by Michael Jackson,

and that there is a "blanket ban" on all R&B cassette tapes. Am. Compl. at ¶ 5. However, he fails to specify whether any cassette tapes are allowed in the facility. Again, without sufficient factual details, this claim is subject to dismissal pursuant to Rule 8(a).

Moreover, even if Plaintiff had pled the requisite factual details, Plaintiff's claims are also subject to dismissal on the merits. While it has been recognized that a prisoner does not lose First Amendment rights while being incarcerated, the Supreme Court has recognized that such rights may be limited so long as they are "reasonably related" to penological interests. Bell v. Wolfish, 441 U.S. 520, 545 (1979). In Turner v. Safley, 482 U.S. 78, 89 (1987), the "reasonably related" test of Bell was applied to a prisoners' rights to send and receive mail.[3] The Turner court held that a prison's rule which prohibited inmate to inmate correspondence via the mail was reasonably related to a legitimate penological interest of security, and did not infringe upon the prisoners' constitutional rights. Turner, 482 US at 91-92.

Finally, Courts have found that the policy of screening cassette tapes for explicit content does not violate an inmate's First Amendment rights because it is reasonably related to the security concerns. See, e.g., Golden v. McCaughtry, 937 F.Supp 818, 822 (E.D.Wisc. 1996).

Accordingly, Plaintiff's First Amendment claims are subject to dismissal for the reasons stated above.

     E.    Inadequate Mental Healthcare

Throughout both the Complaint and the Amended Complaint Plaintiff makes various

---

[3] The Turner court applied the Bell test in four factors: (1) whether there is a valid, rational connection between the prison regulation and legitimate government interest put forward to justify it, (2) whether there are alternative means of exercising rights that remain open to inmates, (3) whether accommodation of asserted rights will have significant "ripple effect" on fellow inmates or prison staff, and (4) whether there is a ready alternative to the regulation that fully accommodates prisoners' rights at *de minimus* cost to valid penological interest.

allegations regarding the inadequacy of the MCI Cedar Junction mental healthcare program.

        1.        Claims of Inappropriate Generic Medication Substitution

Plaintiff has alleged that he is currently being treated with the prescription medication "Prozac," which he claims is a generic substitute for "Zoloft," the medication he was previously treated with at another facility. He requests that he again be treated with "Zoloft" rather than "Prozac."

It is well settled that a disagreement between a prisoner and a physician regarding adequate medical treatment does not constitute deliberate indifference under the Eighth Amendment. Wesley v. Vaughn, 2002 WL 1286898, *2, (3d Cir. 2002) (denying preliminary injunction that requested name brand medication in lieu of generic medication) (citing Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987)). A physician's decision regarding diagnostic treatment, which constitutes a medical judgment, is not actionable under § 1983. See Estelle v. Gamble, 429 U.S. 97, 107 (1976). See Id. While the claim is therefore subject to dismissal, the Court will not dismiss this claim *sua sponte* and will permit a summons to issue as to Defendants David Nolan and Kathleen Dennehy only.

        2.        Due Process Right to Transfer

Easley seeks immediate transfer to another facility for mental health treatment. Courts have held that absent a statutory or constitutional right to be in a facility, a prisoner has no right to compel prison officials to effectuate a transfer to another facility, as there generally is no liberty interest or due process right to a prison transfer. See, e.g., Burr v. Duckworth, 547 F.Supp. 192 (N.D. Ind. 1982), affirmed 746 F.2d 1482 (7th Cir. 1984); Nash v. Black, 781 F.2d 665 (8th Cir. 1986); Maxton v. Johnson, 488 F.Supp. 1030 (D.S.C. 1980). Accordingly, Easely's claim that he has been denied his right to due process of law when prison officials refused his request to

transfer him from MCI-Cedar Junction to a mental health facility, is dismissed *sua sponte*.

### 3. Eighth Amendment Claim

While Plaintiff has no due process right to compel prison officials to transfer him, he may have a viable § 1983 claim under the Eighth Amendment if he can sufficiently demonstrate deliberate indifference to his safety and well being by showing a failure to provide him with adequate mental healthcare. See Farmer v. Brennan, 511 U.S. 825 (1994). The Eighth Amendment's guarantee of adequate medical care applies to both physical and mental health treatment. Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991).

To state a viable claim of action for inadequate medical care, an inmate must first state facts sufficient to allege that the plaintiff has a serious medical need for which adequate care has not been provided. Id. at 831. The inmate must also allege that a prison official responsible for his care knew or should have known the need for such treatment and subsequently failed to provide it. Id. A serious medical need has been defined as one that involves a substantial risk of serious harm if it is not adequately treated. Kosilek v. Maloney, 221 F.Supp.2d 156, 180 (D.Mass 2002) (citing Farmer, 511 U.S. at 835-47). The First Circuit has defined a serious medical need as one "'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention.'" Mahan v. Plymouth County House of Corr., 64 F.3d 14, 18 (1st Cir. 1995) (quoting Gaudreault v. Mun. of Salem, 923 F.2d 203, 208 (1st Cir. 1990)).

"Adequate medical care" requires treatment by qualified medical personnel who provide services that are of a quality acceptable when measure by prudent professional standards in the community, tailored to an inmate's particular needs, and that are based on medical considerations. United States v. DeCologero, 821 F.2d 39, 42-42 (1st Cir. 1987). Deliberate indifference,

however, may only be found where the medical care provided is "so clearly inadequate as to amount to a refusal to provide essential care." Torraco, 923 F.2d at 234.

Here, Plaintiff has alleged that Defendant failed to provide him with adequate mental health care, and as a result he is in immediate danger of committing suicide. He claims he is not being guarded by qualified officers trained in mental health issues, nor is he being provided proper mental health treatment, including the denial of proper medications. In his response to the TRO issues, Defendant Nolan disputes these contentions, thus raising questions of fact. Accordingly, the Court will allow this claim to proceed and directs that a summons shall issue with respect to Defendants David Nolan and Kathleen Dennehy only.

    V.    Failure To State a Claim Upon Which Relief Can Be Granted

        A.    Plaintiff's Claims Against Kathleen Dennehy, Commissioner of Corrections

            1.    Sovereign Immunity

First, to the extent that Plaintiff seeks monetary damages against Commissioner Dennehy in her official capacity, his claims are barred because Defendant is entitled to Eleventh Amendment sovereign immunity. See 28 U.S.C. § 1915(e)(2)(B). It is well settled that a plaintiff cannot sue an official acting within the scope of his/her office for money damages. Will v. Michigan Department of State Police, 491 U.S. 58, 64-71 (1989). "...[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Id. at 71. Thus, Plaintiff claims that Commissioner Dennehy violated his rights by failing to allow him to transfer to a mental health facility, or by failing to provide him with adequate mental healthcare, constitutes an attack on the Commonwealth. Accordingly, these claims are dismissed *sua sponte*.

2. No *Respondeat Superior* Liability

Moreover, to the extent that Easely seeks to hold Commissioner Dennehy liable for the failure of lower level prison officials to transfer him to a mental health facility or to provide adequate mental healthcare, such claims are also not legally cognizable. *Respondeat superior* is not a viable theory of § 1983 liability here. Capozzi v. Department of Transp., 135 F. Supp. 2d 87, 98 (D. Mass. 2001) citing Ruiz v. Riley, 209 F.3d 24 (1st Cir. 2000). Rather, a supervisor is liable only for his or her own acts and omissions and is not vicariously liable for the acts of his or her subordinates. See id. Since it appears that Commissioner Dennehy had no direct involvement with respect to the alleged failure to transfer Plaintiff to a mental health facility, or the alleged failure to provide him with adequate mental healthcare, there is no "affirmative link" which makes her liable. See Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1999). Accordingly, for the reasons stated above, all of Plaintiff's claims for damages against Commissioner Kathleen Dennehy are dismissed *sua sponte*.

3. Prospective Injunctive Relief

Notwithstanding the above, however, Defendant Dennehy may be sued in her official capacity in a § 1983 suit for prospective injunctive relief. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 n.10 (1989). Therefore, the Court permit Plaintiff's claims for prospective injunctive relief to proceed as set forth in this Memorandum and Order, and a summons shall issue with respect to Defendant Dennehy.

VI. Motion to Leave to File an Amended Complaint

Plaintiff has filed a Motion for Leave to File an Amended Complaint ( # 10), which substitutes original "John Does" 1-4 with the names of the respective prison and hospital officials. Defendants Nolan and Dennehy have filed an opposition to this motion on the grounds that

Plaintiff has not complied with Local Rule 15.1(B), which requires advance service on the proposed additional parties. The Court nevertheless allows the motion subject to the rulings contained in this Memorandum and Order, requiring the Plaintiff to show cause why all claims against all Defendants other than Defendants Nolan and Dennehy should not be dismissed.

### VII.    Motion to Amend the Complaint

Plaintiff has filed a Motion to Amend the Complaint (# 11), which is opposed, (#15). The Court will permit Plaintiff to Amend his Complaint, as the Defendants have not yet been served. See Fed.R.Civ.P 15(a). The document submitted labeled "Motion to Amend Complaint," will be viewed as the Amended Complaint, and the Court has considered all claims pled in both the original Complaint and the Amended Complaint. The Amended Complaint is subject to the provisions contained in this Memorandum and Order. If necessary and appropriate, Defendants may move for the filing of a Comprehensive Consolidated Amended Complaint accompanied by a Memorandum in support thereof.

### VIII.    Motion for 90 Day Continuance

Plaintiff has filed a Motion for a 90 Day Continuance (# 8). Plaintiff elected to file this action and he provides no valid reason for the matter to be stayed. In fact, Plaintiff has sought expedited emergency attention for some of his claims. He cannot have it both ways. Accordingly the motion is denied.

### IX.    Motion for Appointment of Counsel

Plaintiff has filed a Motion to Appoint Counsel (# 9). Plaintiff's Motion for Appointment of Counsel is denied without prejudice at this time. The decision to appoint counsel is discretionary, and a civil litigant prisoner does not have a constitutional or statutory right to appointed counsel. Dellenbach v. Hanks, 76 F.3d 820, 823 (7th Cir. 1996) cert. denied, 519 U.S.

894 (1996). In order to qualify for appointment of counsel, a party must be indigent and exceptional circumstances must exist such that the denial of counsel will result in a fundamental unfairness impinging on the party's due process rights. See DesRosiers v. Moran, 949 F. 2d 15, 23 (1st Cir. 1991). See also Manisy v. Maloney, 283 F.Supp. 2d. 307, 317 (D. Mass. 2003) (Memorandum and Order on Report and Recommendation of Magistrate Judge Dein, adopted (on the denial of counsel issue) by Judge Stearns by Memorandum and Order (#32) dated September 4, 2003 in C.A. 01-11849-RGS). In determining whether there are exceptional circumstances sufficient to warrant the appointment of counsel, a court must examine the total situation, focusing on the merits of the case, the complexity of the legal issue, and the litigant's ability to represent himself. DesRosiers, 949 F.2d at 23-24 (citations omitted).

While Plaintiff alleges that he is an indigent prisoner suffering from mental illness, he has not yet demonstrated the kind of "exceptional circumstances" that warrant appointment of counsel. Accordingly, the Motion for Appointment of Counsel is denied without prejudice to renewing after the Defendant has responded to the Complaint, and upon showing of exceptional circumstances to warrant the appointment of counsel.

X.   Motion to Compel Production of Documents

Plaintiff has filed a Motion to Compel Production of Documents (# 13). Defendants have responded in Opposition to this Motion (# 16). Plaintiff's document request is premature, since the Plaintiff has not yet served process on the Defendants, nor has a response to the Amended Complaint been filed. Plaintiff will be afforded an opportunity to conduct discovery in due course, and may seek production of documents in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules. Plaintiff may move to compel only after he has duly requested the documents from the Defendants and a response to the request has been made. See

Fed.R.Civ.P 34, L.R. 7.1.  Accordingly, Plaintiff's Motion to Compel the Production of Documents is denied without prejudice.

    XI.    <u>Second Motion to Amend the Complaint</u>

Plaintiff's second Motion to Amend the Complaint (#17), filed on July 22, 2005, is allowed, however the Court notes that Plaintiff has failed to raise any new claims by this document.[4]

    XII.    <u>Plaintiff's Motion for Reconsideration</u>

Plaintiff filed a Motion for Reconsideration and Stay (#18), along with the Affidavit of Rashad Rasheed, (#19).  The Court finds the Affidavit not to be germane to the issues presented at this time, and finds Plaintiff has provided no valid bases for reconsideration.  Accordingly, this motion is denied without prejudice.

    XIII.    <u>Order to United States Marshal</u>

As noted above, the Court will permit summonses to issue at this time, only with respect to Defendant Nolan and Defendant Dennehy.  Accordingly, the United States Marshal shall bear all costs of service of process on these defendants, as directed by the Plaintiff.  While the Court will permit free service of process by the United States Marshal, Plaintiff is advised that it is solely his responsibility to ensure timely service, in compliance with Federal Rules of Civil Procedure 4, and this Court's Local Rules, and to provide the United States Marshal with all necessary information, forms, and copies, to effectuate service.  The Clerk shall provide the

---

[4] Plaintiff's Motion to Amend the Complaint, (# 17), repeats his allegations regarding the prison grievance procedure, denial of recreation, and law library/bathroom access.  The motion also attempts to raise a claim regarding the use of prison funds on "Disney and PG-13" movies.  As pled, these assertions do not state any legally cognizable claim, and the Court will not consider this a separate and distinct claim in this action.

Plaintiff with the appropriate forms (USM form 285) along with a copy of this Memorandum and Order. Plaintiff shall arrange to serve a copy of this Memorandum and Order along with his Amended Complaint and summons, upon the Defendants.

## CONCLUSION

Based on the foregoing, it is hereby ORDERED:

1. Summonses shall issue for Defendants David Nolan and Kathleen Dennehy with respect to Plaintiff's mental healthcare claims.

2. Plaintiff is directed to provide the United States Marshal's Office with all requisite information to enable that office to effectuate service on the Defendants. The United States Marshal's Office shall bear all costs of service on the Defendants.

3. Plaintiff is directed to show cause within forty-two (42) days of this Memorandum and Order as to why all claims against Defendants Erika Grandbar, Daniel Sullivan, Wayne Belisle, Ernest Therin, Timothy Sullivan, John Bodbeck, Arthur Brewer, Susan J. Martin, June S. Binney, and John Does 4-8 should not be dismissed.

4. Plaintiff's Motions for Leave to Proceed *in forma pauperis* (##1, 20) is allowed.

5. Plaintiff's Motion for Leave to File Amended Complaint (#10) is allowed.

6. Plaintiff's Motion to Amend the Complaint (#11) is allowed.

7. Plaintiff's Motion to Continue for 90 days (#8) is denied.

8. Plaintiff's Motion to Appoint Counsel (#9) is denied without prejudice.

9. Plaintiff's Motion to Compel Documents (#13) is denied without prejudice.

10. Plaintiff's Motion to Amend the Complaint (#17) is allowed.

11. Plaintiff's Motion to Reconsider/Stay (#18) is denied

SO ORDERED.

Dated in Boston, Massachusetts, on this 16th day of <u>August</u>, 2005.

/s/ Edward F. Harrington  
EDWARD F. HARRINGTON  
SENIOR UNITED STATES DISTRICT JUDGE